Filed 11/20/25  In re M.A. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re M.A., a Person Coming Under the Juvenile Court Law. | B341383 <br><br> (Los Angeles County Super. Ct. Nos. 22CCJP04164, 22CCJP04164A ) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent. <br> v. <br> E. A., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Cathy J. Ostiller, Judge.  Reversed and remanded with instructions.

Jack A. Love, under appointment by the Court of Appeal for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

---

**MEMORANDUM OPINION[1]**

Appellant E.A. (mother) challenges the juvenile court's order terminating her parental rights with respect to her daughter, M.A. Her sole contention is that the juvenile court and respondent Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law. We agree and conditionally reverse and remand.

### DISCUSSION

**I. Legal Principles**

ICWA and related California law[2] reflect "a congressional determination to protect Indian children and to promote the

---

[1] We resolve this case by memorandum opinion. (Cal. Stds. Jud. Admin., § 8.1.) We do not recite the factual and procedural background because our opinion is unpublished and the parties are familiar with the facts of the case and its procedural history. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].) Undesignated statutory references are to the Welfare and Institutions Code.

[2] The Legislature incorporated ICWA's requirements into California law in 2006. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

2

stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family." (*In re T.G.* (2020) 58 Cal.App.5th 275, 287; see also 25 U.S.C. § 1902.) Both ICWA and California law define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subd. (b)(1).)

Federal regulations and state law impose on the juvenile court and DCFS "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see also *In re J.C.* (2022) 77 Cal.App.5th 70, 77.) This duty of inquiry, the only one at issue here, "begins with the initial contact' (§ 224, subd. (a)) and continues throughout the dependency proceedings." (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 77.) To discharge this initial inquiry duty, DCFS must ask "'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian child is domiciled.'" (*Ibid*; see also § 224.2, subd. (b)(1).) "Extended family member" generally means "a person who has reached 18 years of age and is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c)(1).)

"Despite its broad terms, section 224.2, subdivision (b) does not require inquiry with every living adult family member." (*In re H.B.* (2023) 92 Cal.App.5th 711, 720.) The statute "is not

3

intended to obligate county welfare departments to search for possible Indian ancestry without regard to cost or other practical considerations. Rather, it is intended to ensure social workers 'ask an added question of extended family members whom [they] often already are investigating in their usual course of work.'" (*Ibid.*) "'The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*In re Dezi C.* (2024) 16 Cal.5th. 1112, 1140 (*Dezi. C.*).)

The juvenile court's determination that an inquiry is adequate, proper, and duly diligent is fact-specific and thus subject to a deferential standard of review. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) "'"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."'" (*Ibid.*) Thus, where an implied finding of adequacy rests on a cursory record and a patently insufficient inquiry, "'"the only viable conclusion is that the finding is unsupported by substantial evidence and the court's conclusion to the contrary constitutes a clear abuse of discretion."'" (*Ibid.*) In such a case, "conditional reversal to undertake the simple task of inquiry balances the weighty interest of Indian children and tribes under ICWA on the one hand, and the interests of dependent children in permanency and stability on the other." (*Id.* at p. 1143.)

## II.     Analysis

Mother predominantly challenges the adequacy of the inquiry into M.A.'s paternal lineage.[3]  She contends "the evidence showed there were paternal extended family members available for Indian ancestry inquiry during the proceedings," and "no evidence father was asked for contact information of the paternal relatives he referred to" during the case.  We agree.

The record indicates that father denied Native American heritage when he appeared at the detention hearing on October 24, 2022 and filed an ICWA-020 form indicating that none of the categories listed under the heading "Indian Status" applied to him or his family.  Father's denials did not relieve DCFS of its inquiry duty.  (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.)  Indeed, the record reflects that DCFS raised the issue at least twice more with father, and he denied Native American heritage on November 29, 2022 and May 8, 2023.

However, the record does not reflect that DCFS ever asked father for the names or contact information of any paternal relatives who could potentially shed light on the issue.  During

---

[3]      She also asserts that "there was no evidence the Department made ICWA inquiry of the person reporting child abuse, or any other person which the ICWA inquiry is not limited to, prior to filing the section 300 petition."  The record does not support this assertion.  An ICWA-010(A) form attached to the petition states that DCFS asked mother about M.A.'s "Indian status" on September 29, 2022, several weeks before the section 300 petition was filed on October 21, 2022.  The detention report dated October 20, 2022, contains the same information.  Additionally, the final section 366.26 report states that "[o]n 10/10/2022, the Reporting Party was questioned by the Child Protection Hotline, as to the Native American Indian heritage of the family," and no heritage was reported.

the November 29, 2022 interview, father informed DCFS that he had a happy childhood with two present parents and three siblings. There is no indication that DCFS asked father for the names or contact information of any of these relatives. In its response brief, DCFS points out that the report states "[n]o names or information were provided" when it asked father specifically about potential placement options for M.A. Aside from the separate context of that inquiry, the passive language makes it unclear whether father refused DCFS's requests for information about his relatives, or whether DCFS failed to ask him. DCFS is obligated to "include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." (Cal. Rules of Court, rule 5.841(a)(5).) The ambiguous, passively worded language here does not meet that standard.

Before father's participation in the case waned, DCFS documented at least five contacts with him – but no inquiry about his relatives.[4] Father appeared virtually at a July 13, 2023, review hearing and testified that he had struggled to find monitors for weekend visits with M.A.: "My mom has passed away. My dad has dementia. My sister has broke her back. I had nobody until recently." Though counsel for all parties cross-examined him, neither counsel nor the court asked father for

---

[4] Due to the circumstances of the case, DCFS had much more frequent contact with mother. The record reflects that it asked mother about her and her family's heritage on numerous occasions. There is no indication that DCFS ever asked mother for any information about father's relatives, even though she and father were married.

further information about his surviving local relatives, such as their names or contact information. While "we cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided" (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082), ICWA requires that the agency make at least some effort to obtain those names during contacts with parents. It is "well established that the duty to develop information bearing on whether a child is an Indian child 'rests with the court and the Department, not the parents or members of the parents' families.'" (*Ibid.*)

DCFS asserts that father "did not make himself available to DCFS nor did he appear in the juvenile court" for much of the case, and did not respond to its specific attempt to ask about ICWA in late April 2024, in connection with the section 366.26 report. Quoting *In re Q.M., supra*, 79 Cal.App.5th at p. 1082, DCFS argues that its "ability to conduct an exhaustive ICWA inquiry necessarily is constrained" due to father's failure to cooperate or provide it with names. While that is true as a general matter, in this case there is no evidence that DCFS made any inquiry about paternal family members during the numerous encounters it had with father during his participation in the case. Although inquiry deficiencies generally may be resolved throughout the course of ongoing dependency proceedings (*J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 461), on the facts and sparse inquiry record of this case we agree that DCFS's belated request amid father's prolonged absence from the case was insufficient. Nothing suggests that father was uncooperative at the outset of the case, yet DCFS made no inquiry about his family when it had the opportunity to do so.

On this record, the inquiry fell well short of complying with the plain language of section 224.2, subdivision (b).  The outcome may have been different if father had no other relatives or DCFS could not locate them, and that information was documented in the record.  However, beyond father's denials and ICWA form, there is no evidence of inquiry into any of the family members he mentioned, which left the juvenile court without a sufficient factual basis upon which to exercise its discretion.  Consequently, the juvenile court's implicit finding of proper and adequate further inquiry and due diligence is not supported by substantial evidence, and its contrary conclusion was an abuse of discretion.  (*In re K.H.* (2022) 84 Cal.App.5th 566, 605.)  In accordance with *Dezi C.*, *supra*, 16 Cal.5th at p. 1141, "conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child."

## DISPOSITION

The order terminating parental rights is conditionally reversed.  The matter is remanded to the juvenile court with instructions to order DCFS to make reasonable efforts to interview paternal relatives about the possibility of M.A.'s Indian ancestry and to report to the court on the results of those efforts.  Based on the information reported, if the juvenile court determines that no additional inquiry or notice to tribes is necessary, the order terminating dependency jurisdiction is to be

8

reinstated.  If additional inquiry or notice is warranted, the court shall make all necessary orders to ensure compliance with ICWA and related state statutes.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.


We concur:



MORI, J.



TAMZARIAN, J.